IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL J. SWANSON,

      Petitioner,                     No. CIV S-05-2206 MCE KJM P

    vs.

TOM CAREY, Warden,

      Respondent.               FINDINGS & RECOMMENDATIONS
_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges the May 23, 2003 decision by the Board of Parole Hearings (BPH or Board) to deny him parole. He contends that the Board's refusal to set a parole date violated his rights to due process and equal protection and violated his plea agreement. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied as explained below.

I. Background

        On July 7, 1978, petitioner was sentenced to life in prison following his guilty plea to first degree murder and his admission that he used a firearm during the commission of the crime. (Answer, Exs. A, B.) Although neither party has provided a copy of petitioner's written

1

plea agreement or the transcript of the guilty plea, petitioner represents that, in exchange for his plea, he was sentenced to seven-years-to-life under California's Indeterminate Sentencing Law (ISL), instead of twenty-five-years-to-life under the Determinate Sentencing Law (DSL). (Pet., Document 1[1] at 18-19 of 116.) This made petitioner eligible for parole after seven years. (Id.) In addition, according to petitioner, the plea agreement provided that the sentence petitioner would receive for the murder and other charges pending against him would be concurrent, and petitioner's wife would receive certain concessions in connection with criminal charges pending against her. (Id.)

Petitioner received his eleventh parole suitability hearing on May 23, 2003. (Answer, Ex. D at 8 & Ex. C.) He was represented by counsel at the hearing. (Id.) Counsel acknowledged that petitioner had timely notice of the hearing and the right to present relevant documents. (Id., Ex. C at 5.) In addition, petitioner submitted letters of support and made a personal statement. (Id., Ex. C at 11-12, 60-63.) The Board panel summarized the background facts of petitioner's crime as follows:

> The murder occurred on December 3rd, 1977. And a neighbor had telephoned Ms. – last name, T-S-O-U-G-R-A-K-I-S, asking for assistance to get into her neighbor's apartment, Richard Tyler's apartment. And he was found lying face up in a large pool of blood, the blood being under his head. And the apartment had been ransacked. There were three gunshot wounds, two in the back, one in the left upper arm. And that Mr. Tyler had died on December 3rd. It was December 5th when his body was discovered.

(Id. at 13.) Petitioner admitted he committed the crime. (Id. at 13-14.) He explained he went to the victim's home to confront him about shooting at petitioner's mother on two occasions while petitioner was in prison. (Id.) When the victim recognized who petitioner was, he started to run away, but petitioner shot him three times. (Id. at 16-18.) Afterwards, petitioner ransacked the victim's apartment and took a number of his possessions. (Id. at 18-19.)

---

[1] The petition is divided into two documents on the court's electronic docket. "Document 1" corresponds to the document labeled "Main document."

2

1  The Board panel denied parole, finding petitioner would pose an unreasonable

2  risk of danger if released. The Board explained its decision as follows:

> The Panel has reviewed all information received from the public and relied on the following circumstances in concluding that the prisoner is not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. This is a one-year denial. The commitment offense was the murder of Richard Bobby Tyler. . . Mr. Tyler was shot to death in his home when the inmate prepared to confront him about an apparent shooting at the inmate's mother while the inmate was in prison on another charge. And in a very short period of time, the inmate – after the confrontation, the inmate shot Mr. Swanson [sic] as he turned to run or get away from – it says you shot Mr. Tyler as he tried to get away from Mr. Swanson, again, in his home. The motive for this crime is trivial. And there are certainly many ways to deal with a situation like that. The inmate didn't need to interject himself in it to begin with. But then after that, the inmate – the commitment of this crime did not deter the inmate from continuing to commit other crimes because he then ransacked Mr. Tyler's apartment and took belongings of him – or his. The inmate does have a history of criminality and had failed previous attempts to correct that criminality. Those attempts included parole due to his prior CDC term as well as juvenile placement. And he had a number of prior robberies that were similar in nature in that the inmate went to the individuals – the victims' homes, entered their homes through false means and then attacked them and stole from them. Institutionally, he has not sufficiently participated in beneficial self-help programs. Until further progress is made, he continues to be unpredictable and a threat to others. He is to be commended for the fact that he has not had a 115 in eight years. Unfortunately, he had acquired a number of them prior to that – 29 total during the course of his incarceration. Most of these were in the '70s and '80s and they really began to taper off in the '90s. In fact, in the '90s, he had only six of the 29. So his behavior certainly increased dramatically. And then of course since '95 having had none. In terms of education, he has continued to upgrade. He has taken college courses, has his AA. He's a paralegal. He has acquired employable skills as a videographer. He has participated recently in the computer in-house program, PLATO program, which covers a number of topics in that program. And he has received exceptional works reports previously as a clerk – video production clerk and elsewhere as a porter. Currently unassigned due to medical issues. For all of these things, he should be commended. Also, part of the prior criminality was also an unstable social history. Early on, the inmate got involved in drugs. And at the time of the commitment offense, by his own admission, was addicted to heroin. He has used marijuana, amphetamines, heroin and cocaine amongst them.   The San Francisco's District

> Attorney's office has responded to PC 3042 Notices and they are opposed to a finding of parole suitability. And the inmate's counselor, Castillo, wrote that he poses a moderate degree of threat to the public at this time. The inmate has appropriate parole plans. He has good support. He has a place to live and he has a place to work. As you know, the law has changed so that the granting Panel can place you in any county in California where they believe you would be most successful on parole. So it's passed that you have to worry about trying to find anything in San Francisco or the Bay Area. And the psychological report by Dr. Rouse is generally supportive of your release. Again, these positive aspects do not, in this Panel's opinion, outweigh the factors of unsuitability. The Panel makes the following findings: That the inmate needs continued participation in self-help, whether that is organized, sponsored or individual participation in self-help, in order to further develop skills that allow him to continue to deal with issues in a non-destructive manner. That means to continue to program the way that you're programming to show us that you can live within the rules of whatever society you're housed in. It happens now to be prison. But that you'll be able to continue to live by those rules when you get to the outside. And we, therefore, make the following recommendations: That you remain disciplinary-free and continue in the present course of positive program, adding to that any self-help programs that you can. Mr. Swanson, you have obviously come a long way. I appreciate your comments about your attitude, because you come off as aggressive, I guess, would be one word, but also angry. And believe me, we can understand where that comes from. But I hope that you will also understand that we don't consider this to be a confrontational hearing. We don't consider this to be an adversarial hearing. And so I hope you'll take that into consideration when you come back next year.

(Id. at 64-68.)

II. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

/////

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA"). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[2] Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the

---

[2] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief. Fry v. Pliler, 127 S. Ct. 2321, 2326-27 (2007).

5

law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

It is appropriate to look to lower court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

The last reasoned decision on petitioner's claims was from the California Supreme Court, which rejected petitioner's claims as follows:

> Petition for writ of habeas corpus is DENIED. (See *In re Dannenberg* (2005) 34 Cal.4th 1061; *In re Rosenkrantz* (2002) 29 Cal.4th 616; *In re Robbins* (1998) 18 Cal.4th 770, 780; *People v. Duvall* (1995) 9 Cal.4th 464, 474; and *In re Swain* (1949) 34 Cal.2d 300, 304.)

(Answer, Ex. D at 1.)

III. Petitioner's Claims

Petitioner claims that the Board's May 23, 2003 decision finding him unsuitable for parole violated his rights to due process and equal protection and violated his plea agreement.

(Pet. at 5.[3]) For the reasons explained below, the decision of the state courts rejecting these claims is not contrary to or an unreasonable application of federal law and should not be set aside.[4]

### A. Parole In California

In Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 11 (1979), the United States Supreme Court found that an inmate has "no constitutional or inherent right" to parole, even when a state establishes a system of conditional release from confinement. The Court recognized, however, that the structure of parole statutes might give rise to a liberty interest in parole that would, in turn, mean an inmate was entitled to certain procedural protections. Id. at 14-15. In Greenholtz, the Court found that the "mandatory language and the structure of the Nebraska statute at issue" created such a liberty interest. Board of Pardons v. Allen (Allen), 482 U.S. 369, 371 (1987).

In McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002), the Ninth Circuit used the Greenholtz-Allen framework to determine whether California statutes created a liberty interest in parole. The critical statute at issue in McQuillion is California Penal Code section 3041, which provides in relevant part:

> (a) In the case of any prisoner sentenced pursuant to any provision of law, other than [the determinate sentencing law], the Board of Prison Terms shall meet with each such inmate during the third year of incarceration for the purposes of reviewing the inmate's file, making recommendations, and documenting activities and conduct pertinent to granting or withholding post-conviction credit. One year prior to the inmate's minimum eligible parole release date a panel consisting of at least two commissioners of the Board of Prison Terms shall again meet with the inmate and shall normally

---

[3] The petition references "May 21, 2003" as the hearing date, but the "21" appears to be a typographical error.

[4] Petitioner originally raised a claim that his rights to due process and equal protection were violated in connection with a parole consideration hearing held on April 11, 2001. (Pet. at 5.) However, that claim was dismissed as time-barred by order dated September 27, 2007. See Docket No. 17.

7

> set a parole release date as provided in Section 3041.5.[5] The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the prisoner was sentenced and other factors in mitigation or aggravation of the crime....
>
> (b) The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Cal. Penal Code § 3041. The Ninth Circuit found that subdivision (b) was like the statutes in both Greenholtz and Allen:

> California's parole scheme gives rise to a cognizable liberty interest in release on parole. The scheme "'creates a presumption that parole release will be granted'" unless the statutorily defined determinations are made.

McQuillion, 306 F.3d at 901-02. Again in Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003), the Court of Appeals reiterated its holding that the California parole scheme created a liberty interest in parole, noting that "California Penal Code § 3041(b) controls" the resolution of the question because its "language clearly parallels the language" under consideration in Greenholtz and Allen. See also In re Rosenkrantz, 29 Cal.4th 616, 654 (2002) (discussing § 3041(b), the California Supreme Court noted "parole applicants . . . have an expectation that they will be granted parole unless the Board finds . . . that they are unsuitable in light of the circumstances specified by statute and regulation"). The court considered the issue yet again in Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006), and once again found that California Penal Code § 3041 gives a life inmate a liberty interest in parole.

---

[5] Cal. Penal Code § 3041.5 establishes procedural requirements for Board hearings.

The existence of a liberty interest means that a decision to deny parole must be supported by some evidence and not be otherwise arbitrary. Superintendent v. Hill, 472 U.S. 445, 457 (1985); Jancsek v. Oregon Board of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). The test is "not whether some evidence supports the *reasons* . . . for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety." In re Lee, 143 Cal.App.4th 1400, 1408 (2006) (emphasis in original). The evidence must have some indicia of reliability. Biggs, 334 F.3d at 915. The "some evidence" requirement is a "minimally stringent" standard and does not require the court to reweigh the evidence or examine the entire record. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994); Hill, 472 U.S. at 455-56.

> [The] analysis is framed by the statutes and regulations governing parole suitability determinations . . . . [W]e must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" . . . constituted an unreasonable application of the "some evidence standard" principle articulated in *Hill*.

Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007) (internal citations omitted). When considering a parole habeas petition, this court must review the record to determine whether the state court decision was an unreasonable application of the "some evidence" principle. Id.

The paramount concern in determining parole suitability is public safety. In re Dannenberg, 34 Cal.4th at 1080, 1084, 1085, 1086 ("the overriding statutory concern" is for public safety; purpose of the statutes is to "guarantee that the Board has fully addressed the public safety implications" of the release determination). Accordingly,

> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

In re Lawrence, 44 Cal.4th 1181, 1212 (2008).

/////

The Board's regulations for setting parole release dates are found in Title 15 of the California Code of Regulations. Section 2401 of this title provides:

> A life prisoner shall be considered for parole for the first time at the initial parole consideration hearing scheduled as provided in Section 2268. A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public.
>
> In setting the parole date the panel shall consider the Sentencing Rules for the Superior Courts. The panel shall also consider the criteria and guidelines set forth in this article for determining the suitability for parole and the setting of parole dates, considering the number of victims of the crime for which the prisoner was sentenced and any other circumstances in mitigation or aggravation.
>
> The terms in this article are guidelines only. The suggested terms serve as the starting point for the board's consideration of each case on an individual basis. The board may establish a term above or below the guidelines when warranted and reasons are stated on the record. A prisoner shall not be released before the minimum eligible parole date.

15 Cal. Code Regs. § 2401.

Section 2402 provides:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the

10

prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

(c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

/////

/////

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

15 Cal. Code Regs. § 2402.

B. Due Process

As described above, the Board found petitioner unsuitable for parole based on the circumstances of his offense; his criminal record; his failure to sufficiently participate in self-help programs; his twenty-nine prison disciplinary convictions; an unstable social history, including

the use of drugs; the District Attorney's opposition to a finding of parole suitability; and the conclusion of petitioner's counselor that he posed a moderate degree of threat to the public. The Panel also noted that petitioner appeared to be aggressive and angry at the hearing. Petitioner argues that the Board's decision was not based on "some evidence" and therefore violated his right to due process. (Traverse at 4-5.)

The court addresses first the Board's reliance on the unchanging factors of the commitment offense and petitioner's prior criminal history in finding him unsuitable for parole. In Biggs, the Ninth Circuit suggested that

> [o]ver time. . . should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

334 F.3d at 916. In Sass, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his offenses of conviction in combination with his prior offenses. 461 F.3d at 1126. Citing Biggs, the petitioner in Sass contended that reliance on these unchanging factors violated due process. The court disagreed, concluding that these factors amounted to "some evidence" to support the Board's determination. Id. at 1129. The court provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation." Biggs, 334 F.3d at 917 (emphasis added). Under AEDPA it is not our function to speculate about how future parole hearings could proceed. Cf. id. The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

Id.

13

1    In Irons, the Ninth Circuit sought to harmonize the holdings in Biggs and Sass,

2    stating as follows:

> Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in Sass precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.
>
> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.
>
> Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. Biggs, 334 F.3d at 917.

Irons, 505 F.3d at 853-54.[6] The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that

---

[6] More recently a panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc. Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in Hayward is no longer citable precedent.

the inmate remains a current threat to public safety.  Lawrence, 44 Cal.4th at 1218-20 & n.20.

In this case, this court cannot find that the Board's continuing use of the circumstances of petitioner's offense runs afoul of the cases cited above.  Biggs recognized that the Board's reliance on the circumstances of the offense for some period of time "can be initially justified as fulfilling the requirements set forth by state law," but that continued reliance on unchanging factors might implicate an inmate's liberty interest in the face "of exemplary behavior and evidence of rehabilitation."  Biggs, 334 F.3d at 916.  Although petitioner's behavior has improved greatly during his incarceration in that his last disciplinary conviction was eight years prior to the 2003 hearing, at the time of the hearing he had suffered a total of twenty-nine disciplinary convictions while in prison.  Petitioner also had a substantial criminal history prior to his incarceration for the murder of Mr. Tyler.[7]  Under these circumstances, the evidence of petitioner's rehabilitation, while substantial, is not such as to render the Board's reliance in 2003 on the unchanging circumstances of his offense and his prior criminal history a violation of petitioner's right to due process.

The Board also relied on the opinion of petitioner's counselor that petitioner would pose a moderate degree of threat to the public if released.  (See Pet., Document 1-2, at 5.) Petitioner argues the counselor does not know him well and had not observed his day-to-day behavior.  (Traverse, Ex. A at 2-3.)  However, as explained above, determining whether the "some evidence" standard is satisfied does not require or allow independent assessment of the credibility of witnesses or the weighing of evidence.  Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  The question is whether there is any reliable evidence in the record that
/////

---

[7] As explained by petitioner himself, prior to the murder of Richard Tyler, he was found guilty of the purse-snatching robbery of 76-year-old Florence Malloy.  Mrs. Malloy sustained a dislocated shoulder, which required corrective prosthetic surgery.  At the time petitioner committed the murder and robbery, he was on parole for robbery, burglary, and assault.  He also was addicted to heroin during the commission of these crimes.  (Traverse at 2; see also Answer, Ex. B at 4.)

15

could support the conclusion reached. Id. The counselor's opinion is some evidence supporting the Panel's decision that petitioner would pose a danger to the public if released.

The Board noted additionally that petitioner had not sufficiently participated in self-help programs. The record reflects that petitioner participated in several programs in the 1990s. (See Traverse, Ex. A.) There is no evidence of participation in these programs after that period, however. Therefore, the Board's reliance on this factor was not unreasonable. The Panel also mentioned petitioner's demeanor at the 2003 hearing when announcing its decision, describing petitioner as "aggressive" or "angry." As stated in Lawrence, "the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." 44 Cal.4th at 1214. The Board was entitled to rely on petitioner's current demeanor in determining whether petitioner was suitable for parole. (Id.)

Petitioner argues that the Board is not impartial because many of its members have law enforcement backgrounds. (Traverse, Ex. A at 5.) This argument fails because petitioner's assertions of bias are conclusory and unsupported. See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995).

As the panel recognized, there were factors favoring a finding of suitability in 2003. Specifically, petitioner had not received a disciplinary conviction in eight years, he had received numerous laudatory employment reports, he had satisfactory parole plans, he had upgraded his education and acquired marketable skills, he had participated in self-help programs, and his psychological report assessed petitioner's risk of dangerousness as "average for the general population and that gains that he has made in this institutional setting are likely to continue to hold." (See Traverse, Ex. C.) As explained above, however, notwithstanding these

positive factors, there was "some evidence" with "indicia of reliability" supporting the Board's conclusion that petitioner would pose an unreasonable danger to the public if released. On the overall record, this court cannot say that the state courts applied federal law unreasonably in denying petitioner's state petition. Accordingly, petitioner is not entitled to relief on his due process claim.

### C. Equal Protection

Petitioner also claims his right to equal protection was violated when the Board failed to find him suitable for parole. (Pet. at 5; Traverse at 5.) A petitioner raising an equal protection claim in the parole context must demonstrate he was treated differently from other similarly situated prisoners and that the Board lacked a rational basis for its decision. McGinnis v. Royster, 410 U.S. 263, 269-70 (1973); McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991). Under California law, the Board is not required to refer to its sentencing matrices or to engage in a comparative analysis of the period of confinement being served by other inmates for similar crimes. Lawrence, 44 Cal. 4th at 1217, 1221; Dannenberg, 34 Cal.4th at 1070-71. Rather, the suitability determination is to be individualized and is to focus upon the public safety risk currently posed by the particular offender. Id. Although petitioner has submitted information and statistics regarding other prisoners convicted of murder, he has failed to show that any other inmate similarly situated to him was granted a parole date. (See Traverse, Ex. A at 15-27 & Ex. D.) Petitioner has also failed to demonstrate that the Board violated his equal protection rights by applying a different suitability standard in his case. (Id.) Accordingly, petitioner is not entitled to relief on a claim that his equal protection rights were violated by the Board's conclusion that he was not suitable for parole.

### D. Violation Of The Plea Bargain

Petitioner claims the provisions of his plea bargain were violated by the Board's finding of his unsuitability for parole because: (1) when he entered into the plea agreement, the maximum possible sentence for murder was less than it is now and petitioner expected to be

17

released by the time of the 2003 parole consideration hearing; and (2) when he entered into the plea agreement, there was "no 'no parole policy', no gubernatorial review or a Board Panel made up of ex-law enforcement personal [sic] or their affiliates," and these combined new circumstances violated the Ex Post Facto Clause. (Pet., Document 1, at 18-20 of 116.) Petitioner states he "plead guilty for the purpose of avoiding the longer 25-years to life sentence" under the DSL and the Board's failure to take as much into account at the parole consideration hearing violated his plea agreement and his federal constitutional rights. (Id. at 20 of 116.) Petitioner also argues he should have been released in accordance with the provisions of the ISL and that the failure of the Board to comply with those provisions violated his rights to due process and equal protection. (Id. at 86 of 116.) He explains that his having now served more than 26 years in prison means "there was no benefit to petitioner's plea agreement." (Id. at 20 of 116.)

Plea agreements are contractual in nature and are construed using the ordinary rules of contract interpretation. United States v. Transfiguracion, 442 F.3d 1222, 1228 (9th Cir. 2006); Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003). Courts will enforce the literal terms of the plea agreement but must construe any ambiguities against the government. United States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). In construing a plea agreement, this court must determine what petitioner reasonably believed to be its terms at the time of the plea. United States v. Anderson, 970 F.2d 602, 607 (9th Cir. 1992), as amended, 990 F.2d 1163 (9th Cir. 1993).

Petitioner has failed to demonstrate that the Board's 2003 decision finding him unsuitable for parole violated the terms of his plea agreement. Petitioner states he believed he would be released from prison prior to the expiration of twenty-five years from the date of his sentence. However, nothing in the record reflects a promise by the prosecutor that petitioner would be released or granted parole at any particular time or before the expiration of his life

18

term. The transcript of petitioner's sentencing proceeding reflects he was sentenced to "the State Prison for life." (Answer, Ex. O at 194.) Petitioner has presented nothing showing the nature of his guilty plea or that any bargain leading to the plea included a promise he would be paroled by a date certain, prior to the expiration of twenty-five years, or prior to the maximum term of life. In short, petitioner has not borne his burden of showing he is entitled to the issuance of the writ. Silva v. Woodford, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner's burden to show custody is in violation of the constitution). This court may not grant habeas relief based upon petitioner's unsupported belief he would be released at a time certain.

### E.  No Parole Policy

Petitioner also appears to be claiming that the Board's refusal to grant him parole was based on an illegal gubernatorial policy against parole for inmates convicted of murder and not on the individual circumstances of his case. (Pet., Document 1 at 88.) However, petitioner has failed to substantiate this allegation with credible proof of the existence of such an illegal policy. He has not provided any evidence that a "no parole" policy on the part of the governor played a part in the Board's decision finding him unsuitable for parole in 2003. Further, as discussed above and independent of any alleged policy, there was "some evidence" in the record to support the Board's decision in this case. See In re Rosenkrantz, 29 Cal. 4th at 684-86 (rejection of claim that former Governor's reversal of a grant of parole resulted from a blanket policy of denying parole in all murder cases because "some evidence" supported the Governor's decision). For these reasons, petitioner is not entitled to relief on this claim.

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  May 4, 2009.

_____
U.S. MAGISTRATE JUDGE

8:swanson2206.hc